Our second case this morning is No. 15-1620 Osram v. Schubert. The board here erred by applying a gloss on its claim construction that resulted in its failure to find anticipation based on Akasaki. Akasaki meets the plain language of the board's construction, which was etching that proceeds in directions dictated by the crystallographic planes of the material being etched. However, the board found no anticipation because the board applied a gloss that excluded etching where defects are present, as in Figure 2 of the 475 pact. I don't think it said that. It said that defects aren't necessarily subject to crystallographic etching. And the question is, are these defects crystals and is the elimination of the defect crystallographic etching, and what did you have in the record that contradicts the board's conclusion that that wasn't established? Your Honor, it's correct in the claim construction section. The board stated that defect etching could be covered by the plain language of its claim construction. But then when it turned to the invalidity section, the board returned to Figure 2 of the 475 patent itself and declared that excluded from its construction. And Figure 2 showed crystallographic etching at defect sites. Well, putting aside Figure 2, what is there in the record that defect sites involve crystallographic etching? In addition to the intrinsic evidence of Figure 2, the parties do not dispute here that crystallographic etching has its conventional meaning. There are also two technical treatises, both of which the board discussed at institution but did not discuss in its final written decision. So you didn't have a declaration from an expert that the fixing of defects involves crystallographic etching? Yes, we did, Your Honor, from Dr. Wetzel. And the position that we took throughout this appeal, including Dr. Wetzel's testimony and his deposition, was that etching through damage is equally crystallographic etching. And that's shown by the 475 patent itself. Where does your expert say this? Let me direct, Your Honors, to A1331, and it is pages 212 to 213 of the deposition. And this is where our expert, Dr. Wetzel, explains that the only difference is that Akasaki does not use the term crystallographic etching. Sure. It is page 212, line 20 is the question at A1331, and the answer is at page 213 and begins at line 7. And this is where Dr. Wetzel explained that the only difference is the label in the 475 patent of using the term crystallographic. There is no dispute.  I don't see that this is saying that the elimination of defect sites involves crystallographic etching. Your Honor. You see he talks about the translation from the Japanese. I don't know. Interesting, but not on point. Your Honor, at page 213, the paragraph begins at line 16 through line 22. So through all the material here, they're describing exactly the same thing, exactly the same solutions with exactly the same results. So to label one step in this process with a new name cannot take away from this work that they have achieved exactly the same thing. And I would direct, Your Honor, as well to page, part of the intrinsic record, A490, which is the wire reference, where the very solution that Akasaki uses, which is KOH solution, is described as etching with strong crystallographic anisotropy. That's in the intrinsic record at A490. Where is that? I know A490, but which paragraph? It's on the right-hand side, the paragraph underneath the figure. It is the second sentence, which discusses the free etching. And the end of that sentence talks about the etching with strong crystallographic anisotropy, as demonstrated in figures 1 and 2. The captions of figures 1 and 2 refer to etching in KOH solution. That is in figure 2 in the caption toward the right-hand side of the page. And in figure 1, the first line of the caption toward the right-hand side of the page. Where does it say these are defect sites? Your Honor, the point here is that the presence of defects doesn't preclude the crystallographic etching from occurring. It occurs equally at defect sites as illustrated in figure 2, as stated in three of the extrinsic references. The 1991 CRC handbook refers to crystallographic etching at pits. The 1987 technical treatise refers to etching crystallographic etch pits. And the Kozawa reference also refers to hexagonal crystallographic etch pits formed by etching. Is it your position that this defect etching necessarily is crystallographic etching? Is that your position? Our position is that defect etching is crystallographic when an etching solution is used that etches that material crystallographically. And that KOH solution, which is used in Akasaki, is such a solution. Our position is not that defect etching is always crystallographic. If there were an etching solution used that was not a crystallographic etching solution, then it would not be crystallographic etching. So as I understand the board's decision, they said defect etching could be, but it's not necessarily crystallographic etching. And you agree with that? We agree with that. That was the statement in the claim construction section. And then later in the opinion, at A17, the board addresses figure 2 of the 475 patent itself. And that's the paragraph at the bottom of A17. Right, where they say we're not persuaded this embodiment says that defect etching is crystallographic etching. That's correct, Your Honor. So why are they wrong? Why are they wrong, yeah. Why are they wrong about figure 2? Figure 2 describes etching to form. Well, let me take the entire explanation of figure 2. In the paragraph before figure 2, and this is at column 3 of the patent, starting at line set A34. The column is 3, and the paragraph starts around line 18. And line 23, the applicants explain what they've discovered here, which is that by employing an initial processing step, that's what they described as the unexpected result, they can then crystallograph the etched sidewalls. They go on to say this unexpected result in reading from line 26 of column 3 has been explored in several experiments by the applicants. Applicants have identified other etching solutions that are able to etch various crystallographic claims into not only gallium nitride GAN, but other materials. They then go on in the next paragraph. Figure 2 is talking about the C-plane, whereas the claims are directed to the non-C-plane, right? Figure 2 is an example of crystallographic etching of the C-plane. Now, some claims of this patent are not limited to etching non-C-planes. I would direct your honor to one of the challenge claims, which is claim 13. Claim 13 has no limitation to etching non-C-planes. What figure 2 is, it's an example of crystallographic etching. It's an embodiment of claim 13. To be sure, there are other claims that require etching non-C-planes crystallographically, and figure 2 would not be an embodiment of those claims. But nonetheless, it's an example of crystallographic etching. The difference between what Dr. Schubert discovered, thought he had discovered, and what was in the prior art, was applying the initial etching step to expose those non-C-planes. There's no dispute that that's met by Akasaki. Can you remind me, did you argue claim 13 and these other claims separately? Or did you argue all your claims together? We argued all of them together. And the reason is that figure 2 is an example of crystallographic etching. That's a term that's recited in all of the claims. And so there was no reason to distinguish claim 13. But there was an argument made by Dr. Schubert that figure 2 was not an embodiment. In response to Judge Dyke's question, it is an embodiment of some of the claims. But it's an example of crystallographic etching, and that applies to all of the claims. And that was the error that the board made in excluding, after they said that defect etching could be encompassed, and then excluding the very defect etching that's described in the 475 patent. Let me tell you what the problem is. It seems to me that this description of figure 2 in the patent and the testimony and other material that you referred us to is not exactly crystal clear on its face. And under those circumstances and without clear expert testimony supporting your position, it seems to me difficult to say that the board's decision is not supported by substantial evidence. So, Your Honor, on this issue, which is a claim construction issue, there is no deference to the board. It's a legal issue. I don't know that it's a claim construction issue. Whether crystallographic etching embraces etching of defects was treated by the board as a claim construction issue. Well, they said that it could. And it looked to see whether in this instance it did. And the exercise of applying its construction, which was reached without discussing the specification, to figure 2 is a claim construction exercise. That is not an issue on which the board gets any deference. That's an issue of what does the intrinsic evidence teach about what the proper claim construction should be. It should have been considered in the claim construction section, and it's disfavored to exclude embodiments to the extent that there is a lack of clarity here. It was on Dr. Schubert to show that figure 2 was something that was distinguished from being part of the invention. It's described as something the applicants have now observed. That's the exact language in column 3. It's at line 35. Applicants have now observed the formation of etch pits. This is something that they considered to be a part of their invention. It was claimed explicitly in claim 13. Dr. Schubert has identified nothing in the intrinsic record that distinguishes figure 2 and says figure 2 is not something that is meant to be covered by these patent claims. There's nothing in the prosecution history that indicates that figure 2 shouldn't be covered. It's not labeled prior art, which it should be under the NPEP if that's what it was supposed to be a description of. And it's not described in the plain language here as something that's prior art. It's described as something that's part of the invention, applicants have now observed. They were discussing the new crystallographic etching solutions that they had described in the prior paragraph, and they were using figure 2 to illustrate the application of those solutions. Why didn't you have an expert declaration that made it clear? Your Honor, we did have an expert declaration that made it clear. Where is it? The expert declaration was referenced in our petition. It was referenced as well throughout the briefing before the PTAB. The board chose not to rely on it. The board addressed the intrinsic evidence. The intrinsic evidence is clear and in our favor here because there is nothing to indicate that figure 2 was excluded. Indeed, figure 2 is consistent with the extrinsic evidence that wasn't created especially for the PTAB. There was evidence from two technical treatises that described etching the pits just like here in the 475 patent as crystallographic etching. I can give the appendix sites to those two treatises as well, as well as a prior art reference, Kazawa, that was referenced in the provisional application that the applicant submitted that also shows etching of defects and calls it creating hexagonal etch pits, crystallographic etch pits. Okay. You're in your rebuttal time. Do you want to save the rest of it? Yes, Your Honor. We'll give you two minutes. Thank you, Your Honor. Mr. Laidow, is that how you pronounce it? Yes, Your Honor. Good morning. May it please the Court. There was no gloss on the claim construction decision that the board made. The board was very clear about what it said. You had to have etching that was dictated by the crystal planes of the material, and at pages 17 to 18 of their decision, they clearly held that that wasn't found. What is the issue here? Whether the defect sites have a crystal structure? Actually not, Your Honor. That's an issue for a different day because the references that were not instituted on, Kazawa, Thayer, some of these others, that the petitioner has continually injected into the proceeding, all the way up into this appeal, they deal, Kazawa does, for example, with defects in the material itself. Thayer is a bulk GAN material made under high pressure where our expert testified that it didn't show crystallographic etching at deposition, even though that wasn't instituted on. But there's been a lot of time spent in the proceeding on it so that petitioner can try to raise those issues later. In Akasaki, there is no defect etching of the type that's talked about in those references because in Akasaki, it's merely debris or, if you will, the crumbs on the table, the damage that's caused by the ion bombardment from the reactive ion etching. I thought they were indentations. I'm sorry? I thought the defect sites were indentations. The defect sites in some of the prior art and in figure two are indentations, but the damage that's being discussed in Akasaki is not indentations that it's talking about. It's talking about this damage that's on the top. That's why we call it material A. And so what there's – How do I – can you show me where in Akasaki that's made clear? I don't know that it's – it could be clearer in Akasaki because he doesn't spend much time on this. There's no mention of the details of this because he wasn't concerned about it. What he says is that – and this is at A631. And, for example, in the paragraph where the number above it is 006, that it's taking away the damage layer. You know, there's no discussion in Akasaki about defects in the material B that we called – And that's precisely why the board found that there was no evidence of record that material B, or the epitaxial layer system, was etched at all, let alone crystallographically etched. And, in fact, the petitioner's expert, Dr. Wetzel, at A1319 in the record, he testified, I would not know whether they have removed all the damage or not, and, therefore, I cannot state whether they have even ventured to etch behind damage or not. That's at page 164 of his deposition, A1319. And so, unlike the situation in Kazawa and some of these other things, or figure two, where there's a defect that's an indentation, there's not even a discussion of that in Akasaki. And it appears to be this, as our expert, Dr. Sheely, testified, an amorphous layer that's on top of the epitaxial layer. And that damage is being removed by whatever etching took place. This entire petitioner's position on the appeal, and in this case, has continually rested on fundamental mischaracterizations of both the patent and now of the board's decision. And so let's start with the invention itself. They say that somehow the invention is not about crystallographic etching, but a fair reading of columns three and four of the patent will show you, as well as... I don't understand them to be assuming that it's about crystallographic etching. I'm sorry. I didn't hear them say it wasn't about crystallographic etching. Well, what they've said in their papers, Your Honor, is that they didn't discover crystallographic etching, that that was known in the art by Kozawa and his others. I don't understand. The issue here today is whether this Kawasaki reference shows crystallographic etching or not. So everybody agrees that the... Why do you say that they're fundamentally mischaracterizing it? Everybody seems to be on the same page as to what the issue is. Actually, they're not, Your Honor. They've taken the position that the inventors had a two-step process and that the exposing step was the new thing. And the reason why they've taken that position in their papers is to... I'm talking about what they're saying here today, what they're arguing about. For you to sort of go into the history, the legislative history of what happened here and say, well, at some point they argued this or argued that, why do we care? Let me go to Figure 2, which you heard certainly today about. And this related actually to Figure 2. With respect to Figure 2, the patent makes clear that Figure 2 is about something that was known. It says this was known, that you could etch kits with known etchants in the top surface, but that the seaplane is otherwise impervious to etching. And one of the things that puts the lie to their discussion of Figure 2, which is not an embodiment of the patent, which our expert testified and the board found was not an embodiment, is in Column 4 at Lines 60 to 61. It states that because the seaplane is impervious to all of the chemicals used in this study, no etch mask is required for the crystallographic etching step. Now, I heard counsel say that Figure 2 is crystallographic etching of the seaplane. But the patent makes it perfectly clear. That never is stated in the patent. Figures 5 and 9 are referred to as the invention. But what the patent makes clear is that the top surface, that seaplane top surface, is impervious to all agents used in the study. So it makes no sense, on the one hand, to say, as they do, that Figure 2 represents crystallographic etching, and for the inventors to make clear that crystallographic, that the seaplane was impervious to the top surface, was impervious to all agents used in the study. And when counsel talks about other solutions being used, the inventors weren't claiming this. Are you saying that Figure 2 is not showing the seaplane? Is that what you just said? No, Your Honor. What I'm saying is that Figure 2 does show what's described in paragraph, the third paragraph, excuse me, in Column 3, and the legend in Column 2 at about line 43 says what Figure 2 is. And it is the top surface. It is the seaplane. And it does show defect etching in the seaplane, which was in the prior art. They say it was previously known. And so they would have this court believe that Figure 2 is an invention, even though it's described in the patent as showing something that was previously known. Where does it say that? Where does it say it was previously known? In line, in Column 4, Your Honor, line 34, well, the full sentence is as described before. I'll go up to that one in a minute. It's been, if I skip down to that line 34, previously has been shown that these agents can etch. This is Column 3, not 4, right? I'm sorry if I said Column 4. I meant Column 3. Yes, Column 3 at line 34 had previously been shown to etch pits at defect sites in the seaplane of Ghan. And above that, and again, Column 3, line 16, 17, 18, molten KOH is known to form pits at dislocations in the seaplane of Ghan. So this was known. They're saying here's what we saw in our study that accords with the prior art, and then they say at the bottom of Column 4 that I said before, by the way, you know, the seaplane, everybody knows, and as we've shown in our own study, is impervious to crystallographic etching. So Figure 2 is not an embodiment, and the reason why that they're pressing it is because they want to say that these are. Suppose we were to agree with them and say that Figure 2 is an embodiment. Do you lose? We might lose based on some other art, but we wouldn't lose this appeal because, as I was stating earlier, there is no evidence in the record that shows that either what we called Material A, the amorphous damage layer, or Material B, the epitaxial layer system in Akasaki, was crystallographically etched. In fact, there's no evidence that the epitaxial layer system, which is what has to be etched in Akasaki, was etched at all. And that's what the board found. The board said, and you would agree with the board's conclusion, that even if this Figure 2 was an embodiment of your invention, it shouldn't be read into the plaintiff's structure. Is that your position? That's certainly correct, but it was certainly the case that we believe that it's not an embodiment of the invention and that that's a manufacture for this lawsuit. But yes, Your Honor. In fact, I also wanted to point out that during the hearings... Just be clear about it. I'm sorry, Your Honor. If we decide that you're wrong about Figure 2 and say that Figure 2 is an embodiment of the claimed invention, where does that leave us? For purposes of this appeal, the appeal would have to be affirmed because Figure 2 is actually showing a defect in... What Figure 2 shows, as our expert testified... No, but try to be clear about this. I'm asking you to assume that Figure 2 is an embodiment of the invention. Yes. And you've argued to the contrary. Let's just hypothetically say we decide you're wrong about that. Yes. Where does that leave us? Do you lose then? No. And if you don't, why do you win? The reason why that the appeal would have to be affirmed in that hypothetical situation is because Figure 2 does show an etch pit in the epitaxial layer system, and there is etching of the etch pit. We know there's at least some etching. We don't think it's crystallographic, but there's some etching of what we've been calling Material B, the epitaxial layer system. Whereas in Akasaki, there is no evidence at all, whatsoever, even their expert couldn't say that it happened, that there was any etching, let alone crystallographic etching, of Material B, the epitaxial layer system. And that's why, even if Figure 2 were wrongly read into the construction... Figure 2, Layer B is the non-C plane? You said Layer B, Your Honor. Yes. Material B, Layer B is a non-C plane. In this instance, it would be non-C plane, yes. In the case of Akasaki. In Figure 2, there is no discussion of non-C plane, because it's simply the etch pit in the top surface of the C plane. I was going to mention that in the hearing at the board, and this is at A368, they asked me if defects are etched at the same time that you're etching crystallographically. Does that mean that there's no crystallographic etching? And I said, no, it doesn't mean that. So, for example, when you're etching a non-C plane, and you're doing it crystallographically, these materials, even when they're well-made, have different kinds of defects in them, like dislocations from the mismatch between the substrate and the lattice that grows on top. That's different from a defect pit, or an etch pit. Anyway, if etching continues along in the non-C plane, and it's crystallographic, and it also etches a defect, I said, and the board took it into consideration, that that doesn't mean there's no crystallographic etching going on, it's just that it goes by the defect, and then continues on its crystallographic way. So, the board never held, or never viewed this case, as that you can't have crystallographic etching in the presence of defects. That was never said by them, and because of the colloquy that we had at the hearing, at A368, it's clear that they were in mind of what our position was on that. I would just note that, looking at Akasaki, and just focusing on that for a minute here, there was, as the board had ample reason to find, there was no express disclosure of crystallographic etching, or even crystal planes in Akasaki. There was no data showing that. The smoothness that it referred to, or the making of square or parallel ends, was clearly caused by the dry etching, and all Akasaki talks about is the removal of damage. So, we end up at inherency, and really the best, as you heard today, that Osram, the petitioner, can say, is that a KOH solution was used, but we don't know what the concentration was, and there's simply no evidence, no data, nothing of any kind, to indicate that the crystallographic etching occurred with respect to the epitaxial layer system, or even that it was etched at all. And the board made those findings, they're subject to the substantial evidence rule, and that's why this particular appeal should be affirmed, Your Honor. And with respect to these other issues, our expert testified, just to put that into the... Okay, I think we're out of time. Thank you, Mr. Levin. Thank you, Your Honor. Thank you. I think Mr. Sanders has two minutes. Your Honor, first to address the issue of if this court finds that Figure 2 was improperly excluded from the board's construction, then necessarily a broader construction should have been applied that at minimum entitles us to a remand to get consideration under that construction. We would submit that reversal is proper, but at minimum, we would be entitled to a remand. Your Honor asked earlier about our expert testimony. Our expert goes through both the intrinsic and extrinsic evidence in detail at A. 1126 through 1131, discussing Figure 2, discussing the 1987 reference that refers to crystallographic etch pits. So that expert testimony explains the specification as well as the extrinsic evidence. It's clear that Figure 2... What page is that? 1126 begins the section. Which volume is that? Volume 1? It's in the only volume, yes. Volume 1 through 1131. It's right at the start of the declaration, paragraphs 5 through 14. In paragraph 9 at A. 1128, our expert expressly says, the passage above describes... That's the passage that we're looking at from the specification in column 3. The passage above describes and Figure 2 shows an example of crystallographic etching. The Board's construction covers this example in the specification, which I believe is proper. Of course, the Board reached a contrary conclusion in the final decision. And then the extrinsic evidence is discussed at A. 1130 to A. 1131. A. 1131 shows the 1987 text. It extracts the crystallographic etch pits shown on the page in the caption. They're called crystallographic etch pits. It was well appreciated by those skilled in the art that crystallographic etching embraced etching of defects, and the Board never considered whether etching through damage is crystallographic. It had said at the time of institution, we have construed crystallographic etching in a way that does not preclude etching that removes damage. And then the Board went and reached a contrary conclusion in its final decision because the Board improperly excluded etching of defects from its construction by adding a gloss in the invalidity section of its opinion about Figure 2. Okay. Thank you, Mr. Sanders. Thank both Councils.